# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 18, 2003 Session

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. E. G. P.

### Appeal from the Juvenile Court for Bradley County
### No. 7515-J    C. Van Deacon, Jr., Judge

### FILED SEPTEMBER 12, 2003

### No. E2003-00433-COA-R3-CV

---

The Juvenile Court of Bradley County ordered that a placement should be found by the Department of Children's Services ("DCS") for a sixteen-year-old mother with her two and one-half-year-old child, the latter of whom had been in foster care most of his life. Time constraints were imposed and DCS did not or was unable to comply with the judgment, which resulted in a finding of contempt. The DCS appeals, and presents a litany of issues for review, one of which alleges that the juvenile court lacked jurisdiction to adjudicate a placement. The judgment is vacated *in toto* and the case is remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is Vacated**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, J.J., joined.

Paul G. Summers, Attorney General and Reporter; Douglas Earl Dimond, Assistant Attorney General for Appellant, State of Tennessee Department of Children's Services.

Ashley L. Ownby, Cleveland, Tennessee, Guardian ad Litem for N. P., Jr.

Debra Lynn House and Ginger Wilson Buchanan, Cleveland, Tennessee, for Appellee, E. G. P.

### OPINION

This appeal is from the judgment of the Juvenile Court of Bradley County which, *inter alia*, held the Department of Children's Services, State of Tennessee, ("DCS") in contempt for its alleged failure to find a suitable placement for a young mother and her child. The State is much aggrieved about this unusual assault on its sovereignty, and presents for review these issues: (1) whether any court, and particularly the juvenile court, has authority to hold the State in contempt; (2) whether a placement order by the juvenile court exceeded its authority; (3) whether the juvenile court accorded the State due process as an alleged criminal contemnor; (4) whether the juvenile court had authority

to impose a selected sanction; and (5) whether the actions of the juvenile court were an abuse of discretion. As to factual matters our review is *de novo* on the record with a presumption of correctness, Rule 13(d) TRAP: as to questions of law our review is *de novo* with no presumption of correctness.

## Background

In May 1997, Appellee, then age twelve, was removed from her home because she was abused by her adult brother. The juvenile court found her to be a dependent and neglected child and awarded her custody to the State. In December 1997, Appellee was permitted to return to her home with the promise that the State's custody would cease in ninety days, nothing adverse appearing.

In May 2000, a review hearing revealed that Appellee, then fourteen years old, was pregnant. She was mentally retarded, and had married, in Alabama, to Nathan P., age seventeen, who requested her custody. Eventually, Appellee was placed with husband at his mother's home. In December 2000, a divestment order emancipated Appellee to her husband, together with her baby.

A year later, Appellee and her baby left husband owing to his abuse. They were homeless, the baby was medically neglected, and they were returned to the DCS custody. Various foster home placements were not successful; one of the placements undertook to discover if Appellee was capable of caring for her baby son. This placement lasted only one month during which her personal hygiene deteriorated as did her attention to the child. Parenting classes were arranged for Appellee on several occasions, from which she would flee. Finally, she was placed in Patton Cottage, a group home in Chattanooga operated by a private agency. This placement was not successful.

On January 28, 2002 the juvenile court entered a judgment reciting that

[T]he Department of Children's Services should attempt to find a placement where [Appellee] can be placed with her baby, [N. P.]. Such a placement should be with a professional trained to assist [Appellee] in developing parenting skills and assessing the likelihood of [Appellee's] ability to parent [N. P.] in the future. The Court further finds that it is the responsibility of DCS to find this placement at the earliest possible date. Based on all of the above and the record, this Honorable Court ORDERS, ADJUDGES, and DECREES that:

* * *

2. That the Department of Children's Services shall find a suitable placement where [Appellee] and her child, [N. P.] can be placed together with an individual who can assist with parenting skills and assess [Appellee's] ability for future parenting.

On February 7, 2002, Appellee filed a motion for contempt alleging that DCS had failed to place her with her child, that the Department was not cooperating with Family and Children's

Services to find a suitable placement for her and her child, and that DCS was willfully refusing to obey the court's order.

The contempt hearing was held on March 4, 2002. Candace Henry, Appellee's caseworker at Patton Cottage, had testified that Patton Cottage could facilitate a mother-child placement, although DCS did not have a contract with Patton Cottage to make such a placement. After the juvenile court ruled that Appellee and her child should be placed together, Ms Henry investigated and believed that Patton Cottage might have one bed available. She met with Ms. Howard, a caseworker, in early January 2002 who believed that the juvenile judge could not order placement and that Appellee had previously demonstrated her inability to care for her son.

About two weeks before the contempt hearing the DCS was looking for a mother-child placement but had not contacted Patton Cottage about a contract. Ms. Henry believed that Patton Cottage could find a place for Appellee and her baby, but another placement worker, Sharon Putnam, informed her that DCS was looking for a foster home instead of placement through Patton Cottage.

Ms. Henry testified that since December 10, 2001, Patton Cottage had worked to place Appellee with her baby, but that she was not aware that DCS had taken any action to fulfill the January 28, 2002 Order until recently, when she was told that DCS was trying to find a placement.

Ms. Henry had no personal knowledge of the contract process at Patton Cottage, which was a placement center for thirteen-to-eighteen-year-old girls, and had no mother-child program. The foster care division of her agency did place mothers in foster homes but the agency would not have a mother-child foster home available until February 2002.

The supervisor of the Regional Placement Unit testified that DCS contracts with providers on an annual basis. The contract with Patton Cottage consisted of four beds for thirteen-to-seventeen-year-olds; DCS *had no mother-baby* contract with Patton Cottage.

The court found that there were placements available in Tennessee for a mother and child and that DCS was in contempt of its order because it had taken no timely actions to obey the judgment, having decided that Appellee was unfit to care for her child. The court later recited that DCS could purge itself of contempt "by providing a comprehensive report and planned reunification services." Immediate placement of the child with Appellee was ordered, and the foster parents (with whom the child had been living for two and one-half years) were ordered not to seek to adopt the child without Appellee's consent. Further, DCS was ordered to stay or dismiss the action it filed in the circuit court to terminate the parental relationship of Appellee and her child.

## Analysis

As we have stated, this appeal centers on the judgment of the juvenile court holding the DCS in contempt for failing to "find a suitable placement where [Appellee] . . . can be placed with her

baby. . . ." The State argues that this decretal provision is beyond the authority of the juvenile court and is therefore void.

Tennessee Code Annotated § 37-1-129(e) provides that

(e) Any order of the court which places custody of a child with the Department shall empower the Department to select any specific residential or treatment placements or programs for the child *according to the determination made by the Department, its employees, agents, or contractors.* (Emphasis supplied).

We think this language clearly vests in the Department the responsibility, in the first instance, to select a specific residential or treatment placement for Appellee and her child. The Appellant argues that the Order does not direct a specific placement, which is left to the discretion of the DCS, but only that the Appellee and her child be placed together.

The court further held that

"[I]f TCA § 37-1-129 is controlling law in the State of Tennessee, then the action of any court would be totally superfluous and the statute is inconsistent with the obligations of this court and the policies of the Petitioner [DCS] following such statute are erroneous."

We hold that Tennessee Code Annotated § 39-1-129 is "the controlling law in Tennessee," and that it is not inconsistent with the obligations of the juvenile courts. The requirements for the protection of children symbolized by Appellee and the baby are legislatively vested, in the first instance, in the administrative agency charged with the caring duty and having the requisite expertise to succor such children. The juvenile court cannot usurp the properly exercised functions of the DCS. Any action, not wholly discretionary, taken by DCS may be subject to judicial review in accordance with established procedure, but initial determinations respecting placements are the responsibility and prerogative of the Agency.

We find it unnecessary to discuss the remaining issues. The judgment of the juvenile court is vacated, *in toto*, and the case is remanded for all appropriate purposes, with costs taxed to the Appellee.

_____
WILLIAM H. INMAN, SENIOR JUDGE